**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

GAGE RUPP,

        Defendant.

Case No. 18-CR-15-LTS

**REPORT AND
RECOMMENDATION**

---

**TABLE OF CONTENTS**

I.   **INTRODUCTION** ................................................................................. 1

II.  **BACKGROUND** ................................................................................ 2

III. **DISCUSSION** ..................................................................................... 8

  A. **Whether the Government dismissed the firearm counts by superseding
  indictment** ........................................................................................ 9

  B. **Whether Rule 48(a) applies to the dismissal of some, but not all, of the counts
  in an indictment** ............................................................................ 13

  C. **Whether Rule 48(a) requires dismissal of the firearm counts** ..................... 14

IV. **CONCLUSION** ................................................................................. 23

## I.   INTRODUCTION

Defendant Gage Rupp moves to dismiss two firearm charges (possession of a firearm by a prohibited person and carrying a firearm in relation to a crime of violence) based on a violation of Federal Rule of Criminal Procedure 48(a). Doc. 94. Rupp was charged with these counts originally, but after the Government filed a superseding indictment dropping them, Rupp pleaded guilty to the only charge contained in that

indictment (Hobbs Act robbery). After his guilty plea was accepted, the Government obtained another superseding indictment, once again charging Rupp with the firearm charges. Rupp argues that this conduct warrants dismissal of the firearm counts. Doc. 94. The Government resists. Doc. 113. Rupp filed a reply (Doc. 114), and the parties filed supplemental briefs after a hearing (Docs. 119, 122, 123). I recommend **denying** the motion to dismiss (Doc. 94).

## II.    BACKGROUND

The original indictment contained charges against Rupp and codefendant Cedric Antonio Wright (but not Derrick Ford, who was added as a codefendant later). Doc. 3. It charged Rupp with three counts: possession of a firearm by a prohibited person, in violation of 18 U.S.C. §§ 922(g)(3), 922(g)(9), and 924(a)(2) (count 2); Hobbs Act robbery, in violation of 18 U.S.C. §§ 2 and 1951 (count 3); and carrying a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (count 4). Doc. 3.

Rupp was arrested on March 27, 2018, and the next day, he appeared before me for his initial appearance and arraignment, where the Government moved for detention. *See* Docs. 10-11. The trial management order set trial for the two-week period beginning on May 29, 2018, and imposed a deadline of May 8, 2018, to inform the court of an intent to plead guilty. Doc. 14. I ordered Rupp remain detained pending trial after a detention hearing on March 29, 2018. Docs. 16, 18. On April 5, 2018, Rupp was charged in the first superseding indictment[1] with the same counts as in the original indictment, and he waived personal appearance at the arraignment that same day. Docs. 21, 24-26.

---

[1] The only difference from the original indictment was a change to the description of the firearm included in Count 4. Doc. 22.

The case proceeded without Rupp's codefendant Wright, who had not yet been arrested. At a status conference on April 25, 2018, Rupp's counsel indicated Rupp was "considering[,] as an option, pleading guilty to the Hobbs Act charge and going to trial on the firearm counts," but counsel asked the court to consider the case as set for trial. Doc. 30. The Government noted that Wright had been arrested on state-law charges in Illinois and that it would seek a writ to gain custody of Wright, and "if that happens soon, that would affect the trial date and the Government would request . . . a joint trial." *Id.* The court noted the May trial setting was firm in the absence of new filings. *Id.*

In the face of the impending notice-of-plea deadline, on Monday, May 7, 2018, the Government and counsel for Rupp exchanged emails about whether Rupp intended to plead or go to trial. *See* Doc. 94-2. The Government indicated that it "intend[ed] to return to the grand jury this week (Wednesday) to seek a superseding indictment" adding a conspiracy charge against Rupp, but it "would not do that if [Rupp] plans to plead guilty." Doc. 94-2 at 2. The Government also noted it was "contemplating dropping the 924(c) given some uncertainty about the gun [and] the need to try to figure which version is accurate." Doc. 94-2 at 3. Rupp's counsel responded that "we have always stated we would plead to the robbery[] [i]f that is the offer." Doc. 94-2 at 2. The Government inquired about Rupp pleading "straight up" (without a plea agreement) to the firearm possession charge in addition to the Hobbs Act robbery charge, leaving "[o]ther issues" to "be sorted out later." *Id.* Rupp's counsel noted hesitancy "plead[ing] straight up absent some agreement that [the Government] would dismiss the 924(c) [charge]." *Id.* The Government outlined an informal potential plea agreement that the Government would need to seek approval to offer in which Rupp would plead to robbery and firearm possession in exchange for the dismissal of the § 924(c) firearm count. *Id.* As an alternative to the agreement, the Government noted:

> [I]f [the Government] remove[s] Rupp from the 924(c) in the superseding indictment to be presented to the grand jury this week, as [it is] presently

inclined to do, it could theoretically be refiled at a later date, but that is not
a certainty. If [Rupp] does not want to agree to any adjustments [related to
the firearm as the Government's potential plea agreement outlined], he
could then plead to the remaining superseding indictment without a plea
agreement.

Doc. 94-2 at 1.

The next morning, on May 8, Rupp's counsel informed the Government that he
intended to plead "to the Hobbs Act count and go to trial on the firearm counts." *Id*. He
filed a "Notice of Intent to Plead Guilty to Count 3" (the Hobbs Act robbery charge)
"without the benefit of a plea agreement," noting that his plea "will still leave counts 2
and 4 [the firearm charges] unresolved." Doc. 31. Shortly thereafter, the district court
filed a trial scheduling order setting trial to begin on May 30, 2018. Doc. 32.
Meanwhile, due to upcoming scheduling issues, my chambers had contacted the parties
about the status of the case and whether they thought it would proceed to trial as scheduled
or whether they would move to continue or resolve the charges by plea. Doc. 94-3. The
Government responded that a second superseding indictment would be returned the next
day and that "[i]n light of the notice of intent to plead guilty and the anticipated changes
in the superseding indictment, [it] do[es] not expect any charges will remain for trial
against [Rupp] at this time." Doc. 94-3 at 1. True to the Government's word, the grand
jury returned the second superseding indictment on May 9, 2018 (it was filed on May
10, 2018), charging Rupp only with Hobbs Act robbery. Doc. 38. The second
superseding indictment also contained charges against codefendant Ford for the first time.
*Id*. I entered an order on May 9, 2018, indicating that the time until the plea hearing was
excluded from the time within which trial must commence under the Speedy Trial Act.
Doc. 33.

On May 10, 2018, the Government confirmed by email with Rupp's counsel that
Rupp was not interested in a plea agreement as previously outlined. Doc. 94-4. Counsel
for Rupp responded that "given the evidence, [his] client is only willing to plead to the

Hobbs Act count." *Id.* When he sent this email, Rupp's counsel had not yet seen the second superseding indictment (it had been returned, but not filed).

Rupp's change-of-plea hearing and arraignment on the second superseding indictment were held on May 15, 2018. Doc. 43. Rupp pleaded guilty to Hobbs Act robbery before a magistrate judge, who recommended the district court judge accept Rupp's plea. Docs. 43-44. Before Rupp's plea had been accepted, on May 17, 2018, the initial appearance and arraignment were held for Rupp's codefendant Ford, and the court entered a trial management order setting Ford's trial for the two-week trial setting beginning on July 16, 2018. Docs. 47-48, 50. The docket also indicates that codefendant Wright had been taken into federal custody, but in Illinois, not the Northern District of Iowa. *See* Docs. 45, 51. On May 22, 2018, the district court accepted Rupp's guilty plea and, noting "[t]here [were] no counts left to be resolved," canceled Rupp's trial scheduled for May 31, 2018. Docs. 54-55.

With no charges pending against Rupp in the second superseding indictment (he merely awaited sentencing) and Wright out of the district, the case proceeded with Ford. Rupp did not participate in a status conference held on June 18, 2018, with the Government and counsel for Ford. Doc. 57. Ford indicated his intent to plead pursuant to a plea agreement on June 19, 2018. Doc. 58. The plea hearing was held on June 26, 2018, and Ford's plea was accepted by the district court on July 16, 2018. Docs. 70, 85. The plea agreement that was filed indicates that Ford signed it on June 14, 2018. Doc. 71.

The Northern District of Iowa gained custody of Wright, and on June 22, 2018, the court held Wright's initial appearance and arraignment and set his trial for the two-week setting beginning on August 20, 2018. Docs. 63, 65. Nearly two months after Rupp had filed his notice of intent to plead, on July 11, 2018, the Government filed a third superseding indictment charging him (as it had in the original indictment) with

Hobbs Act robbery, which Rupp had already pleaded to (now labeled count 5), possession of a firearm by a prohibited person (now labeled count 4), and carrying a firearm in relation to a crime of violence (now labeled count 7). Doc. 80. For the first time, Rupp was also charged with conspiracy to commit Hobbs Act robbery (count 6). *Id.* The Government does not dispute Rupp's representation in the current motion that the evidence presented to the grand jury to obtain the third superseding indictment did not materially differ from the evidence before the grand jury when it issued the original and first superseding indictments. Doc 94 at 2; Doc. 94-1 at 6; Doc. 113-1.[2]

On July 16, 2018, I held an arraignment on the third superseding indictment and status conference with all defendants and their counsel. Doc. 87. The Government explained that it included charges that the defendants had already pleaded to in the superseding indictment because it understands that a superseding indictment technically replaces the prior indictment, which is the reason it is called "superseding." I inquired whether the Government intended for Rupp to go to trial on count 5 (the Hobbs Act robbery count that he had already pleaded guilty to), and the Government indicated it did not, and Rupp's counsel stated he had nothing to add. Therefore, when I arraigned Rupp, I asked how he pleaded to the counts in the third superseding indictment with the exception of count 5. I noted that "[p]rior to the Third Superseding Indictment, Defendant Rupp was pending sentencing and was not scheduled for trial with Defendant Wright, who had a trial date of August 20, 2018." Doc. 88. Wright indicated that "he had intended to request a continuance of the August 20, 2018[] trial date to allow adequate time to prepare for trial," and I found that he "would also be entitled to a new trial date based on the Third Superseding Indictment," so I "scheduled a trial date for both Defendants for the two-week period beginning September 10, 2018." Doc. 88. I found

---

[2] Rupp cites to Exhibits A and B, which are transcripts of the grand jury testimony from March 7, 2018, and May 9, 2018. Docs. 95, 95-1.

"any delay between August 20, 2018, to September 10, 2018, for Defendant Wright should be excluded from speedy trial calculations to allow him to be joined for trial with Defendant Rupp as the case has not been severed." Doc. 88 (emphasis omitted).

Rupp filed a motion to dismiss the § 924(c) firearm count on August 6, 2018 (which I have addressed by a separate report and recommendation), and he filed the current motion to dismiss on August 8, 2018, arguing that the Government's use of superseding indictments to dismiss counts abused the grand jury process. Docs. 91, 94. A fourth superseding indictment issued on August 8, 2018, containing the same charges (with the same count numbers) against Rupp as the third superseding indictment. Doc. 99. On August 14, 2018, Wright filed a motion to continue trial, which neither Rupp nor the Government resisted. Doc. 109. Given Wright's need for additional time to review discovery, as well as the pending motions to dismiss (Rupp's current motion, as well as Rupp's and Wright's motions to dismiss the § 924(c) firearm counts), I granted the motion and continued Wright and Rupp's trial to the two-week period beginning November 19, 2018, excluding time for purposes of the Speedy Trial Act from August 14, 2018, to the time of the November trial. Doc. 116.

I held a hearing on the motion to dismiss on September 11, 2018, at which Leon Spies, who is codefendant Ford's attorney, and Cedar Rapids Police Officer John O'Brien testified. Doc. 119. Their testimony indicated that shortly after the robbery, Ford had implicated Rupp in the offense conduct, and the Government had been attempting to work out a deal with Ford in exchange for his testimony against Rupp. In mid-April 2018, neither the Government nor Ford's attorney could find Ford, and they remained unable to locate Ford until his arrest on May 16, 2018. At the hearing, I also admitted Plaintiff's exhibits 1-5 (Docs. 113, 121) and Defendant's exhibits A, B, C-1 to C-3, and D-F (Docs. 94, 95, 120). Doc. 119. I questioned the Government at the hearing on the Speedy Trial Act implications of its argument that the firearm counts in the original indictment had

never been dismissed and remained pending through June 2018. At my request, the parties submitted supplemental briefing on this and other issues. Docs. 122, 123.

## III.  DISCUSSION

Rupp moves to dismiss the firearm counts against him (possession of a firearm by a prohibited person and carrying a firearm in relation to a crime of violence). Doc. 94. He argues that the Government abused the grand jury process and circumvented Federal Rule of Criminal Procedure 48(a) by charging him with these counts originally, dismissing them through a superseding indictment that omitted these counts, and then, after he had pleaded guilty to the Hobbs Act robbery count and his plea had been accepted, charging him with the firearm counts again through another superseding indictment.

Federal Rule of Criminal Procedure 48(a) provides: "The government may, with leave of court, dismiss an indictment, information, or complaint. The government may not dismiss the prosecution during trial without the defendant's consent." Prior to this rule's enactment, at common law, the Government could dismiss charges "without the consent of the court at any time before the empaneling of the jury." *United States v. Salinas*, 693 F.2d 348, 350 (5th Cir. 1982). "A preliminary draft of Rule 48 adopted the common-law rule, adding the requirement that the prosecutor state his reasons for seeking a dismissal." *Id.* In the version that was ultimately adopted and that remains in effect today, however, the Supreme Court "added the words 'leave of court' and deleted the requirement of a statement of reasons for dismissal." *Id.* at 350-51.

> The words "leave of court" were inserted in Rule 48(a) without explanation. While they obviously vest some discretion in the court, the circumstances in which that discretion may properly be exercised have not been delineated by th[e Supreme] Court. The principal object of the "leave of court" requirement is apparently to protect a defendant against prosecutorial harassment, *e.g.*, charging, dismissing, and recharging, when the

Government moves to dismiss an indictment over the defendant's objection. But the Rule has also been held to permit the court to deny a Government dismissal motion to which the defendant has consented if the motion is prompted by considerations clearly contrary to the public interest.

*Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977) (citations omitted); *accord Woodring v. United States*, 311 F.2d 417, 424 (8th Cir. 1963) ("The purpose of Rule 48(a) is to protect a defendant from harassment by the government through charging, dismissing and then re-charging without placing a defendant in jeopardy." (citation omitted)).

Rupp argues that the Government evaded Rule 48(a)'s "leave of court" requirement by dismissing counts by superseding indictment, rather than by motion, and that the Government's conduct of "charging, dismissing, and recharging" the firearm counts amounts to prosecutorial harassment. The Government responds that because indictments may coexist, the original indictment was never dismissed, and the firearm counts always remained pending. Even if those counts were dismissed, the Government argues that Rule 48(a) applies only to the dismissal of the entire indictment, not to dismissal of some, but not all, of the counts in an indictment. Finally, even if Rule 48(a) applies, the Government argues that because it dismissed the firearm counts due to the unavailability of an essential witness (Ford), it did not engage in bad faith, and dismissal of the firearm counts with prejudice is not an appropriate remedy.

## A. *Whether the Government dismissed the firearm counts by superseding indictment*

The Government argues that it did not dismiss the firearm counts against Rupp contained in the original and first superseding indictments by omitting these counts from the second superseding indictment. The Government relies on caselaw holding that "the superseding indictment and the original indictment can co-exist" and that "a superseding indictment does not in effect dismiss the original indictment." *United States v. Walker*,

363 F.3d 711, 715 (8th Cir. 2004); *see also* **United States v. Yielding**, 657 F.3d 688, 703 (8th Cir. 2011) ("An original indictment remains pending prior to trial, even after the filing of a superseding indictment, unless the original indictment is formally dismissed."); **United States v. Hickey**, 580 F.3d 922, 930 (9th Cir. 2009) (collecting cases from the First, Third, Fifth, Seventh, and Tenth Circuits holding that the Government may proceed to trial on any pending indictment). In the cases cited by the Government, the courts addressed only whether the filing of a superseding indictment, standing alone, acts to dismiss the other pending indictments; none of the cases involved additional conduct by the Government suggesting its intent that the other pending indictments be dismissed by the superseding indictment. *Cf. Hickey*, 580 F.3d at 930 (noting that "[t]he central question is whether [the defendant] was fairly on notice of the charges")*; **United States v. Vavlitis**, 9 F.3d 206, 210-11 (1st Cir. 1993) (noting that the defendant was not prejudiced by proceeding to trial on the original indictment when, midway through trial, the superseding indictment was dismissed because the defendant had never been arraigned on it; the original and superseding indictments contained the same charges and differed only by one paragraph, and the defendant "had an opportunity to prepare a defense based on it" and was "well informed" of the charges against him).

Here, after Rupp pleaded guilty to Hobbs Act robbery and the court set his trial date on the remaining firearm counts in the first superseding indictment for May 30, 2018, the Government filed the second superseding indictment omitting the firearm charges and represented by email to the court that no "charges . . . remain for trial against [Rupp] at this time." Doc. 94-3 at 1. On the basis of this representation, the court canceled Rupp's scheduled trial. Both parties and the court proceeded on the basis that the Government had dismissed the firearm charges against Rupp. Rupp did not participate in a status conference in June 2018. Doc. 57. And when the Government filed the third superseding indictment, which once again included the firearm counts, the

Government relayed its intent during the arraignment that a superseding indictment replaces the prior indictment. During this time, Rupp was not on notice that the firearm counts against him remained pending, and he did not work to resolve these charges or otherwise prepare a defense to these charges.

The parties and the court likely believed that the superseding indictments replaced and dismissed the prior indictments because in the context of the Speedy Trial Act, the Eighth Circuit has held that "the filing of 'a superseding indictment has the same effect as dismissing an original indictment and filing a new indictment.'" *United States v. Van Someran*, 118 F.3d 1214, 1219 (8th Cir. 1997) (quoting *United States v. McKay*, 30 F.3d 1418, 1420 (11th Cir. 1994)); *see also* 18 U.S.C. § 3161(h)(5) ("[i]f the . . . indictment is dismissed upon motion of the attorney for the Government and thereafter a charge is filed against the defendant for the same offense, . . . any period of delay from the date the charge was dismissed to the date the time limitation would commence to run as to the subsequence charge had there been no previous charge" is excluded for speedy trial purposes).[3] It is not at all clear, and I believe quite doubtful, that the district court

---

[3] Indeed, in *Walker*, a case the Government relies on to argue that the original indictment remained pending, the Eighth Circuit distinguished Speedy Trial Act cases and noted "[t]he present case does not involve speedy trial issues." 363 F.3d at 715. Here, if the firearm charges had remained pending against Rupp, his speedy trial clock would have run for thirty-nine days from March 29, 2018 (when I ruled on the Government's detention motion), to May 8, 2018 (when Rupp filed his notice of intent to plead), excluding April 5, 2018 (the date the first superseding indictment was returned and Rupp waived personal appearance at the arraignment). The argument could be made that Rupp's speedy trial clock would have then run for another thirty-one days from May 15, 2018 (the date of Rupp's plea hearing) and expired on June 15, 2018. *See* 18 U.S.C. § 3161(c)(1)), (h)(1)(D), (h)(5); *United States v. Mallett*, 751 F.3d 907, 912 (8th Cir. 2014); *United States v. Moses*, 15 F.3d 774, 777 (8th Cir. 1994). The Government disputes this calculation because "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted" is excludable time, and the speedy trial clock for Rupp's codefendants had not run by June 15, 2018. 18 U.S.C. § 3161(h)(6); *see also United States v. Lightfoot*, 483 F.3d 876, 886-87 (8th Cir. 2007) ("[W]hen a newly indicted or arraigned defendant is joined with a defendant whose speedy trial clock has already started running, the latter defendant's speedy trial

would have canceled Rupp's May trial date if the Government had not represented that the firearm counts had been resolved.  It is also uncertain whether the district court would have allowed Rupp's trial to be continued based on Ford's arrest and initial appearance in the case on May 16, 2018 (Docs. 47, 48), or based on Wright's federal arrest in Illinois on May 15, 2018, and subsequent appearance in this court on June 22, 2018 (Docs. 45, 63).  Rupp's trial date on the firearm counts was canceled because of the Government's representations that those counts had been dismissed.  If they had remained pending, it is possible that Rupp would have been able to move for their dismissal based on a violation of the Speedy Trial Act[4] or in the alternative, that he may have prevailed at trial in May based on the strength (or lack thereof) of the Government's case at that time.

I find that the Government constructively dismissed the firearm counts against Rupp when it filed a superseding indictment omitting those charges and notified the court to cancel Rupp's scheduled trial because no unresolved charges remained pending against Rupp.  *See, e.g.*, *United States v. Friedman*, 649 F.2d 199, 202-03 (3rd Cir. 1981) (affirming district court's finding that although "the original indictment was not formally

clock will be reset so that it reflects the speedy trial clock of the newly added codefendant.); *United States v. Winfrey*, 900 F.2d 1225, 1227-28 (8th Cir. 1990) ("[T]he speedy trial clock does not begin to run until the date the last codefendant makes an initial appearance, provided that this period of delay is 'reasonable.'").  The problem with this argument is that because of the way the Government proceeded, Rupp was never joined for trial with Ford—Ford's initial appearance and arraignment were held on May 17, 2018, and the court set Ford's trial for July 2018, while Rupp's trial remained set for May 31, 2018—and Wright had not appeared in the district and had his trial joined with Rupp by June 15, 2018, either.  The court was clear with the Government throughout the proceedings that Rupp's trial would proceed on May 31, 2018, without his codefendants if they remained at large and outside the district.

[4] Because I ultimately find the Government dismissed the firearm charges, I do not believe there is a speedy trial issue—Rupp's thirty-nine days stopped upon dismissal and were "reset" to Wright's fourteen days when they were joined for trial on July 16, 2018.  *See Lightfoot*, 483 F.3d at 886-87 (suggesting that "when defendants, all of whose speedy trial clocks have already commenced, are joined together," the speedy trial clock "resets" to whichever defendant's clock has "the most time remaining," not "to zero").

dismissed," "[t]he original indictment [wa]s dismissed, whether it has been formally done or not," because it was clear the Government was proceeding only on the superseding indictment); *cf. United States v. Quintana*, No. 12CR214S, 2017 WL 8889843, at *9-10 (W.D.N.Y. Oct. 23, 2017) (granting defendant's motion to dismiss count contained in original indictment but omitted from superseding indictment that Government never formally dismissed but did not intend to pursue), *report and recommendation adopted in relevant part*, 2018 WL 718565 (W.D.N.Y. Feb. 6, 2018). I recognize that courts have held the Government may not dismiss counts informally by filing superseding indictments, because "[t]he requirement that the government obtain leave of the court to dismiss [in Rule 48(a)] would be superfluous if the government could, in effect, dismiss a charge by simply omitting it from a subsequent indictment." *Hickey*, 580 F.3d at 929. In the future, if a similar situation were to arise, the better course of action would be to require the Government to formally dismiss the firearm counts in the original and first superseding indictments or else proceed to trial on those counts. Unfortunately, that is not what occurred here. In this instance, based on the specific procedural history of this case, I believe it is appropriate to find that the second superseding indictment's omission of the firearm counts dismissed the firearm counts in the original and first superseding indictments.

### B. Whether Rule 48(a) applies to the dismissal of some, but not all, of the counts in an indictment

The Government argues that Rule 48(a)'s leave-of-court requirement applies only to the dismissal of the entire indictment, not to the dismissal of only some charges contained in the indictment. The Government cites to no caselaw to support this proposition. All the authority that I have found on this issue supports that Rule 48(a) does apply to the dismissal of a single count in an indictment. *See Hickey*, 580 F.3d at 929; *In re United States*, 345 F.3d 450, 452 (7th Cir. 2003) ("It is true that Rule 48(a)

of the Federal Rules of Criminal Procedure requires leave of court for the government to dismiss an indictment, information, or complaint—or, we add, a single count of such a charging document."); *United States v. Delagarza*, 650 F.2d 1166, 1167 (10th Cir. 1981) (per curiam) ("An indictment may be dismissed by the U.S. attorney prior to trial and with leave of the court . . . . The same rule governs the dismissal of one or more counts of an indictment."); *McKlemurry v. United States*, 478 F.2d 1185, 1187 (5th Cir. 1973) (per curiam) ("[Federal Rule of Criminal Procedure 48(a)] requires the consent of the trial court to effect the dismissal of a count of an indictment."); 3B Charles A. Wright, et al., *Federal Practice and Procedure* § 801 (4th ed. 2013) (noting that Rule 48(a) applies to "a dismissal of some counts of an indictment or information without dismissing all"); *see also, e.g.*, *United States v. Sprofera*, 299 F.3d 725, 727 (8th Cir. 2002) (addressing defendant's argument that the government violated rule 48(a) by dismissing some, but not all, of the counts in an indictment); *United States v. Rush*, 240 F.3d 729, 730-31 (8th Cir. 2001) (per curiam) (same); *Woodring*, 311 F.2d at 424 (same). This interpretation seems in accord with the purposes of Rule 48(a). I reject the Government's argument that Rule 48(a) permits the dismissal of some of the counts in an indictment without obtaining leave of court.

### C. Whether Rule 48(a) requires dismissal of the firearm counts

The Government should have obtained leave of court under Rule 48(a) before dismissing the firearm counts. But Rupp did not raise this issue at the time of the dismissal or otherwise request that the Government provide its reasons for seeking dismissal. When an indictment is dismissed under Rule 48(a) and the Government later reindicts the defendant on the same charges, courts have analyzed the Government's reasons for the initial dismissal after the fact to determine if reindictment violates the purpose of Rule 48(a). *See, e.g.*, *United States v. Feldhacker*, 849 F.2d 293, 295 (8th

Cir. 1988); *United States v. Angilau*, No. 2:08-CR-431-TC, 2012 WL 346446, at *10-14 (D. Utah Feb. 1, 2012), *aff'd in part, appeal dismissed in part*, 717 F.3d 781 (10th Cir. 2013) (not addressing issue). Although "[a]s a general rule, a dismissal with leave of court is considered to be without prejudice," *DeMarrias v. United States*, 487 F.2d 19, 21 (8th Cir. 1973) (per curiam), courts have (on rare occasion) found the dismissal to bar the Government from bringing the charges anew. *See United States v. Derr*, 726 F.2d 617, 619 (10th Cir. 1984) (holding that when the Government obtained leave to dismiss charges against the defendant on the day of trial over the defendant's objection, the Government was barred from recharging the defendant when its reason for seeking dismissal was that it was "dissatisfied with the state of the investigation" and wanted to investigate further); *Salinas*, 693 F.2d at 350, 352-53 (holding that when the court granted the Government's Rule 48(a) dismissal on the day of trial after the jury had been chosen based on the Government's assertion that it wanted to seek a superseding indictment, the Government was barred from reprosecution because the superseding indictment was nearly identical to the original indictment, and the Government indicated it sought dismissal because it believed members of the jury knew the defendant; the court held that the Government could not seek Rule 48(a) dismissal for the purpose of circumventing the rules of jury selection); *Angilau*, 2012 WL 346446, at *2-3, *13-14 (holding that when the Government had indicted the defendant on assault charges and, in a different case, indicted the defendant on the same charges plus robbery charges, which the court had severed, the Government could not reindict the defendant on the assault charges after dismissing them two weeks before trial over the defendant's objection; the Government filed the assault charges in an indictment that also charged the defendant with an unrelated charge under the Racketeer Influenced and Corrupt Organizations Act (RICO), and the court found the Government had previously dismissed the assault charges solely to seek "a potentially better avenue for conviction" by bringing them with the

RICO charge); ***United States v. Poindexter***, 719 F. Supp. 6, 10-12 (D.D.C. 1989) (holding that although the Government acted in good faith in seeking dismissal of two of three counts based on insufficient evidence due to the inability to use classified information and testimony protected by the Fifth Amendment, dismissal should be with prejudice because "pick[ing] and choos[ing] among several charges in a single indictment, proceeding to trial on some, and asking to delay until some future, indefinite date, the resolution of others . . . . lends itself to abuse and is particularly invasive of defendant's legitimate expectations"; the court noted that even if the defendant were acquitted on the remaining count, he "would have to wait in a state of uncertainty and under public obloquy for an indefinite period of time until the government decided that, somehow, for some reason, the time had become more propitious for proceeding with a trial on the second half of the charges"); ***United States v. Fields***, 475 F. Supp. 903, 904-07 (D.D.C. 1979) (holding that when the Government moved for Rule 48(a) dismissal over the defendant's objection because the Government could not "vouch for the credibility of an essential witness," the Government was barred from recharging the defendant when the court found the Government never had sufficient evidence to indict the defendant and did so only to pressure the defendant into testifying); *see also* ***United States v. Pub. Warehousing Co. K.S.C.***, No. 1:09-CR-490-TWT/AJB, 2010 WL 6397552, at *1 (N.D. Ga. Oct. 5, 2010) (summarizing the cases barring reindictment as involving an original dismissal that "was (1) for a tactical advantage in derogation of the defendant's rights, (2) to harass the defendant, or (3) a weapon to induce a guilty plea with a threat of indictment" (citing ***United States v. Dyal***, 868 F.2d 424, 429 (11th Cir. 1989))), *report and recommendation adopted sub nom.*, ***United States v. Agility DGS Holdings, Inc.***, 2011 WL 1193974 (N.D. Ga. Mar. 30, 2011).

Whether the Government's original dismissal of the firearm counts should be with prejudice largely turns on the Government's reasons for dismissal and whether

reindictment violates the purpose of Rule 48(a)'s "leave of court" requirement. The Eighth Circuit has "recognized two circumstances in which the district court may deny leave to dismiss an indictment: when the defendant objects to the dismissal, and when dismissal is clearly contrary to the manifest public interest." *United States v. Jacobo-Zavala*, 241 F.3d 1009, 1012 (8th Cir. 2001); *see also United States v. Acevedo Murillo*, No. CR 07-2026-MWB, 2008 WL 111067, at *2-3 (N.D. Iowa Jan. 8, 2008). Neither appear to apply in this case. With regard to the latter, the Eighth Circuit has held that the district court should grant leave to dismiss unless the prosecutor is acting in bad faith or has an improper motive—such as seeking dismissal due to "bribery, inconvenience to the prosecutor, or personal dislike for the victim of a crime." *Jacobo-Zavala*, 241 F.3d at 1014-15 (citing *United States v. Hamm*, 659 F.2d 624, 629-30 (5th Cir. 1981)). For example, when a prosecutor seeks dismissal because the defendant is serving time for the same conduct on state charges, and the defendant consents to the dismissal, the district court cannot deny leave based on its disagreement with the prosecutor's strategic decision on whether the defendant "ought to be tried in a federal forum." *Id.* at 1011, 1014. The Eighth Circuit has also held that the public's interest in resolving an important jurisdictional question (regarding state versus federal jurisdiction on reservation land) is an insufficient reason for the district court to deny leave to dismiss when the defendant "does not wish to be prosecuted," and the Government seeks dismissal for "an adequate and proper reason . . . : that the evidence needed for conviction had been lost or misplaced and the memories of key witnesses had faded." *United States v. Dupris*, 664 F.2d 169, 174-75 (8th Cir. 1981). This case does not involve a manifest public interest that would have required denial of a motion to dismiss.

When the defendant objects to the dismissal (whether at the time or after the fact, as here), dismissal without prejudice should still be granted unless there is evidence of prosecutorial harassment, bad faith, or an otherwise improper purpose in seeking

dismissal.  "[T]he prospect of re-indictment or retrial does not [alone] foreclose a court from dismissing an indictment without prejudice."  *Pub. Warehousing Co.*, 2010 WL 6397552, at *7 n.6; *see also Feldhacker*, 849 F.2d at 295 ("In general, absent prosecutorial abuse, a defendant does not obtain immunity from prosecution simply because the prosecution has previously dismissed an indictment which described the criminal acts at issue.").  The Eighth Circuit has held that the Government's purpose in seeking dismissal was not improper (and thus, the Government could reindict the defendant on the same charges) when the Government wished to file additional charges based on "further development of [the] case," *United States v. Mendenhall*, 597 F.2d 639, 641 (8th Cir. 1979) (per curiam); when the Government's case "became severely weakened" by the court's order granting suppression, *Feldhacker*, 849 F.2d at 295; and when the Government sought to correct an error in the original indictment through reindictment, *United States v. Arradondo*, 483 F.2d 980, 983 (8th Cir. 1973).

Rupp argues that he and the Government entered into a de facto plea agreement whereby he would plead guilty to Hobbs Act robbery in exchange for the dismissal of the firearm counts.  I do not find that the evidence supports this theory.  As outlined in the background section, Rupp made it clear that he would take a deal where he pleaded to only the Hobbs Act robbery count, but the Government repeatedly declined this bargain. Rupp suggested throughout that he was contemplating pleading to the Hobbs Act robbery count anyway and going to trial on the firearm counts.  His notice of intent to plead and his email to the Government informing it of his decision indeed indicate that he intended to plead to the robbery count and to keep his trial date for the firearm counts.  It appears the Government dismissed the firearm counts not to comply with some unspoken plea agreement or to lull Rupp into pleading guilty to the robbery charge, but to avoid the May trial date on the firearm charges due to insufficient evidence.  In any event, even if the Government's conduct did affect the validity of Rupp's plea, I believe that allowing

Rupp to withdraw the plea would be the appropriate remedy, which he does not seek to do.

The question remains whether the Government's dismissal of the firearm counts to avoid trial was appropriate under Rule 48(a).  The Government states that the evidence against Rupp depended on Ford's cooperation, and at the time the Government obtained the second superseding indictment omitting the firearm charges, the Government had not been able to locate Ford for about a month, despite enlisting the help of the police.  Once Ford was charged and arrested (after Rupp pleaded and the firearm counts were dismissed, but before his plea was accepted and his scheduled trial was canceled), the Government contends that it needed time to work out a deal with Ford in exchange for his testimony against Rupp.  Rupp challenges the Government's proffered reason, noting that Ford signed the plea agreement on June 14, 2018, filed a notice of intent to plead on June 19, 2018, and had a plea hearing on June 26, 2018, but the Government did not reinstate the firearm charges against Rupp until July 11, 2018.

I am concerned by the Government's conduct in this case.  The Government was not transparent with Rupp nor the court regarding its intent to reindict Rupp once it had secured Ford's cooperation.  *Cf. **Arradondo***, 483 F.2d at 983 (noting that the Government indicated its intent to reindict when moving for Rule 48(a) dismissal).  Although in retrospect, the Government's emails contain hints about its intentions—stating that no charges remained for trial "at this time"; that it could "theoretically . . . refile" the 924(c) charge "at a later date, but that is not a certainty"; and that it needed time to figure out which version of events regarding the gun "is accurate"—I can also see how Rupp believed the Government had decided not to pursue the firearm charges because of "uncertainty about the gun."  This is especially troubling in light of the firearm charges being dismissed at the time of Rupp's plea hearing, potentially affecting the court's ability to ensure Rupp truly understood the consequences of his plea, and given

that Rupp's plea was accepted, leading him to believe the case against him was resolved. *Cf. Poindexter*, 719 F. Supp. at 11-12. Moreover, given the Government's inquiry regarding delaying trial until Wright was in custody, which was denied, and the Government's failure to inform the court of its intentions to refile at the time of the dismissal, I cannot help but wonder if the Government was motivated, at least in part, to attempt an end-run around the court's firm trial date. This worry (and any unfairness to Rupp) could have been assuaged if the Government had moved for dismissal without prejudice under Rule 48(a) so that everyone was on the same page and so that Rupp could have had the opportunity to object and insist on his trial.

Nevertheless, I do not find that dismissal of the firearm charges is an appropriate remedy in this case. First, I note that Rupp was not prejudiced, which some courts have held is required for a Rule 48(a) dismissal to bar reprosecution. *See United States v. Shaw*, No. 5:04CR-14-R, 2008 WL 65390, at *2 (W.D. Ky. Jan. 4, 2008); *see also, e.g.*, *United States v. Williams*, 720 F.3d 674, 703-04 (8th Cir. 2013) (noting the defendant was not prejudiced by Rule 48(a) dismissal); *Arradondo*, 483 F.2d at 983 (same); *Woodring*, 311 F.2d at 424 (same). Rupp was not unnecessarily detained, since he had pleaded to the robbery count and was awaiting sentencing. I do not find that the dismissal of the firearm counts induced Rupp's plea (and as noted above, Rupp does not seek to withdraw his plea). Rupp does not argue that double jeopardy or other constitutional principles have been violated.[5] Neither does he invoke the Speedy Trial

---

[5] This distinguishes the case I cited to the parties at oral argument and requested supplemental briefing on. In *Garcia-Aguilar v. United States District Court for Southern District of California*, 535 F.3d 1021, 1023 (9th Cir. 2008), the defendants pleaded guilty before a magistrate judge to an indictment charging them with unlawfully reentering the country after previously being removed, in violation of 8 U.S.C. § 1326. Before the district court judge accepted the pleas, the Government issued a superseding indictment charging the defendants with unlawfully reentering the country after previously being removed for committing a felony, in violation of 8 U.S.C. § 1326(b)(2), exposing the defendants to a greater maximum sentence. *Id.* at 1023-24. The Government asked the district court to find the pleas defective under Rule 11.

Act, and his lack of issue with the timing of his trial is further supported by his consent to his codefendant Wright's continuances.

Second, and perhaps more importantly, I do not find that dismissing charges based on the inability to locate a witness amounts to bad faith or prosecutorial harassment, at least on the facts of this case. I recognize that in *Derr*, the Tenth Circuit held that "dissatisf[action] with the state of the investigation" and the need for "further investigation" did not warrant dismissal without prejudice under Rule 48(a) on the day of trial, emphasizing that "with prejudice" dismissal was not "unduly harsh" because the government was "obviously unprepared to proceed" to trial. 726 F.2d at 619. *Derr* is distinguishable from this case because dismissal did not occur on the day of trial. *See United States v. Olson*, 846 F.2d 1103, 1114 (7th Cir. 1988).

The facts of this case also differ from *Derr* because rather than a general need for more evidence, here, the Government sought more time to obtain a specific piece of evidence—namely, Ford's testimony, a witness the Government had diligently[6] been

---

*Id.* The district court rejected the defendants' pleas to the original indictment, but the Ninth Circuit reversed, ordering the district court to accept the pleas. *Id.* at 1023, 1026. The Ninth Circuit held that "[t]he government lost its power to file additional charges the moment the defendants pled guilty knowingly, voluntarily and unconditionally before the magistrate judges." *Id.* at 1026. Although the opinion does not mention double jeopardy, double jeopardy principles would have barred the Government from bringing the charge in the superseding indictment once jeopardy attached to the charge pleaded to in the original indictment. *See also United States v. Aquino*, 242 F.3d 859, 866 (9th Cir. 2001) (declining to address defendant's argument that the Government's issuance of a superseding indictment after the defendant had pleaded guilty but before he was sentenced violated due process; the defendant argued that new charges against his codefendants in the superseding indictment made him subject to sentencing enhancements, but the court found his sentence unaffected).

[6] Rupp argues the Government was not diligent in its attempts to locate Ford, especially in light of the fact that he was arrested on May 16, 2018 (Doc. 47), only six days after an arrest warrant was issued (on the second superseding indictment) on May 10, 2018 (*see* Docs. 38, 39, 41). Although in hindsight perhaps more steps could have been taken, I credit Officer O'Brien's testimony about the attempts he made to locate Ford.

trying to locate using police resources. Multiple courts have held that the Government may move for dismissal under Rule 48(a) based on the inability to locate an essential witness or to secure such a witness's cooperation. *See **United States v. Goodson***, 204 F.3d 508, 510-13 (4th Cir. 2000) (holding that Government's Rule 48(a) motion should have been granted without prejudice when the Government was "unprepared to proceed" on the day of trial because one of its witnesses was on vacation— the court had previously denied the government's request for an eight-day continuance—and another of its witnesses could not appear at the last minute because his estranged wife had been taken hostage); ***United States v. Palomares***, 119 F.3d 556, 558-60 (7th Cir. 1997) (Government could recharge when it had been unable to locate its witness for five months and the defendant was likely unprepared for trial since he had sought a continuance the week before, which had been denied); ***Olson***, 846 F.2d at 1113-14, 1113 n.8, 1114 n.10 (Government could recharge when it dismissed the indictment about a week before trial based on concerns that "the only eyewitness . . . might perjure herself at trial"); ***United States v. Correia***, 531 F.2d 1095, 1096-97, 1099-1100, 1099 n.5 (1st Cir. 1976) (suggesting Government could recharge when it diligently sought key witness using FBI and local police help and obtained several continuances from the court); ***United States v. Casados***, No. 11-CR-00440-PAB, 2011 WL 6300942, at *1-2 (D. Colo. Dec. 16, 2011) (Government can recharge based on inability to locate victim who recanted testimony after the defendant violated a no-contact order, even though the Government had located the victim and arrested her for violations of her supervised release by the time the court granted leave to dismiss); *see also **United States v. Wallace***, 848 F.2d 1464, 1469 (9th Cir. 1988) ("As to the tactical advantage gained by obtaining [star witness's] testimony on [defendant's] drug trafficking activities, it is not clear to us that the government's dismissal was motivated by its desire to get that testimony or even that such a desire would have been an improper motivation."). As I noted earlier, the Government should

have fully explained in advance to the court and to Rupp its difficulties finding the witness and its reasons for seeking dismissal. *See Palomares*, 119 F.3d at 558. As Rupp did not raise this issue to the court's attention at the time of the dismissal, I do not fault the Government for its failure to seek leave in this instance, and I do not find the Government acted in bad faith or with intent to harass.

In sum, the Government did not intentionally seek to evade the "leave of court" requirement of Rule 48(a) by using a superseding indictment to dismiss counts in this case. The Government's reasons for dismissal were not improper under Rule 48(a), and if the Government had sought leave, it would most likely have been granted. Therefore, the extreme sanction of dismissal with prejudice is not an appropriate remedy in this case. I recommend that the defendant's motion to dismiss be denied.

## IV.    CONCLUSION

I fully recognize the Government's discretion in seeking charges and deciding which charges should proceed to trial. The Federal Rules of Criminal Procedure and statutes (such as the Speedy Trial Act) affect how and when the Government can exercise that discretion. Although I do not find in this particular case that the Government intentionally violated Rule 48(a), in future cases, the Government should seek leave of court under Rule 48(a) for the dismissal of counts as well as indictments.

For the reasons discussed above, I respectfully recommend that the district court **deny** Defendant Rupp's motion to dismiss (Doc. 94).

In light of the trial date of November 26, 2018 (as requested by the parties), objections to this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1), Federal Rule of Criminal Procedure 59(b), and Local Criminal Rule 59, must be filed **within seven days** of the service of a copy of this Report and Recommendation; any response to the objections must be filed **within five days** after

service of the objections. A party asserting such objections must arrange promptly for the transcription of all portions of the record that the district court judge will need to rule on the objections. LCrR 59. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Crim. P. 59. Failure to object to the Report and Recommendation waives the right to de novo review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

DATED this 24th day of October, 2018.

Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa