# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

UNITED STATES OF AMERICA,

              Plaintiff,

vs.

GAGE RUPP,

              Defendant.

No. CR18-15-LTS

**ORDER**

_____

       This matter is before me on a Report and Recommendation (R&R) (Doc. No. 133) in which the Honorable Kelly K.E. Mahoney, Chief United States Magistrate Judge, recommends that I deny defendant Gage Rupp's motion (Doc. No. 94) to dismiss charges of possession of a firearm by a prohibited person (Count 4) and carrying a firearm in relation to a crime of violence (Count 7) based on an alleged violation of Federal Rule of Criminal Procedure 48(a). Rupp and the Government have filed objections.[1] *See* Doc. Nos. 146 and 147. Neither party has responded to the other's objections. The objections are fully submitted and ready for decision.

---

[1] On November 2, 2018, Rupp appeared before United States Magistrate Judge Mark A. Roberts and pleaded guilty to Counts 6 and 7 of the fourth superseding indictment, reserving the right to appeal my decision on his motion (Doc. No. 94) to dismiss. *See* Doc. Nos. 150, 158, 161. I accepted his guilty plea on November 6, 2018. Doc. No. 164.

# I. BACKGROUND

Judge Mahoney provided the following background in her R&R:[2]

> The original indictment contained charges against Rupp and codefendant Cedric Antonio Wright (but not Derrick Ford, who was added as a codefendant later). Doc. 3. It charged Rupp with three counts: possession of a firearm by a prohibited person, in violation of 18 U.S.C. §§ 922(g)(3), 922(g)(9), and 924(a)(2) (count 2); Hobbs Act robbery, in violation of 18 U.S.C. §§ 2 and 1951 (count 3); and carrying a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (count 4). Doc. 3.

> Rupp was arrested on March 27, 2018, and the next day, he appeared before me for his initial appearance and arraignment, where the Government moved for detention. *See* Docs. 10-11. The trial management order set trial for the two-week period beginning May 29, 2018, and imposed a deadline of May 8, 2018, to inform the court of an intent to plead guilty. Doc. 14. I ordered Rupp remain detained pending trial after a detention hearing on March 29, 2018. Docs. 16, 18. On April 5, 2018, Rupp was charged in the first superseding indictment[3] with the same counts as in the original indictment, and he waived personal appearance at the arraignment that same day. Docs. 21, 24-26.

> The case proceeded without Rupp's codefendant Wright, who had not yet been arrested. At a status conference on April 25, 2018, Rupp's counsel indicated Rupp was "considering[,] as an option, pleading guilty to the Hobbs Act charge and going to trial on the firearm counts," but counsel asked the court to consider the case as set for trial. Doc. 30. The Government noted that Wright had been arrested on state-law charges in Illinois and that it would seek a writ to gain custody of Wright, and "if that happens soon, that would affect the trial date and the Government would request . . . a joint trial." *Id.* The court noted the May trial setting was firm in the absence of new filings. *Id.*

---

[2] Rupp does not object to the Background in the R&R, except to the extent it does not contain additional facts in the record as discussed in Rupp's objections. *See* Doc. No. 139 at 1. I will consider those additional facts in conjunction with the Background in analyzing Rupp's objections.

[3] The only difference from the original indictment was a change to the description of the firearm included in Count 4. Doc. 22.

In the face of the impending notice-of-plea deadline, on Monday, May 7, 2018, the Government and counsel for Rupp exchanged emails about whether Rupp intended to plead or go to trial. *See* Doc. 94-2. The Government indicated that it "intend[ed] to return to the grand jury this week (Wednesday) to seek a superseding indictment" adding a conspiracy charge against Rupp, but it "would not do that if [Rupp] plans to plead guilty." Doc. 94-2 at 2. The Government also noted it was "contemplating dropping the 924(c) given some uncertainty about the gun [and] the need to try to figure which version is accurate." Doc. 94-2 at 3. Rupp's counsel responded that "we have always stated we would plead to the robbery[] [i]f that is the offer." Doc. 94-2 at 2. The Government inquired about Rupp pleading "straight up" (without a plea agreement) to the firearm possession charge in addition to the Hobbs Act robbery charge, leaving "[o]ther issues" to "be sorted out later." *Id.* Rupp's counsel noted hesitancy "plead[ing] straight up absent some agreement that [the Government] would dismiss the 924(c) [charge]." *Id.* The Government outlined an informal potential plea agreement that the Government would need to seek approval to offer in which Rupp would plead to robbery and firearm possession in exchange for the dismissal of the § 924(c) firearm count. *Id.* As an alternative to the agreement, the Government noted:

> [I]f [the Government] remove[s] Rupp from the 924(c) in the superseding indictment to be presented to the grand jury this week, as [it is] presently inclined to do, it could theoretically be refiled at a later date, but that is not a certainty. If [Rupp] does not want to agree to any adjustments [related to the firearm as the Government's potential plea agreement outlined], he could then plead as to the remaining superseding indictment without a plea agreement.

Doc. 94-2 at 1.

The next morning, on May 8, Rupp's counsel informed the Government that he intended to plead "to the Hobbs Act count and go to trial on the firearm counts." *Id.* He filed a "Notice of Intent to Plead Guilty to Count 3" (the Hobbs Act robbery charge) "without the benefit of a plea agreement," noting that his plea "will still leave counts 2 and 4 [the firearm charges] unresolved." Doc. 31. Shortly thereafter, the district court filed a trial scheduling order setting trial to begin on May 30, 2018. Doc. 32. Meanwhile, due to upcoming scheduling issues, my chambers

had contacted the parties about the status of the case and whether they thought it would proceed to trial as scheduled or whether they would move to continue or resolve the charges by plea. Doc. 94-3. The Government responded that a second superseding indictment would be returned the next day and that "[i]n light of the notice of intent to plead guilty and the anticipated changes in the superseding indictment, [it] do[es] not expect any charges will remain for trial against [Rupp] at this time." Doc. 94-3 at 1. True to the Government's word, the grand jury returned the second superseding indictment on May 9, 2018 (it was filed on May 10, 2018), charging Rupp only with Hobbs Act robbery. Doc. 38. The second superseding indictment also contained charges against codefendant Ford for the first time. *Id.* I entered an order on May 9, 2018, indicating that the time until the plea hearing was excluded from the time within which trial must commence under the Speedy Trial Act. Doc. 33.

On May 10, 2018, the Government confirmed by email with Rupp's counsel that Rupp was not interested in a plea agreement as previously outlined. Doc. 94-4. Counsel for Rupp responded that "given the evidence, [his] client is only willing to plead to the Hobbs Act count." *Id.* When he sent this email, Rupp's counsel had not yet seen the second superseding indictment (it had been returned, but not filed).

Rupp's change-of-plea hearing and arraignment on the second superseding indictment were held on May 15, 2018. Doc. 43. Rupp pleaded guilty to Hobbs Act robbery before a magistrate judge, who recommended the district court judge accept Rupp's plea. Docs. 43-44. Before Rupp's plea had been accepted, on May 17, 2018, the initial appearance and arraignment were held for Rupp's codefendant Ford, and the court entered a trial management order setting Ford's trial for the two-week trial setting beginning on July 16, 2018. Docs. 47-48, 50. The docket also indicates that codefendant Wright had been taken into federal custody, but in Illinois, not the Northern District of Iowa. *See* Docs. 45, 51. On May 22, 2018, the district court accepted Rupp's guilty plea and, noting "[t]here [were] no counts left to be resolved," canceled Rupp's trial scheduled for May 31, 2018. Docs. 54-55.

With no charges pending against Rupp in the second superseding indictment (he merely awaited sentencing) and Wright out of the district, the case proceeded with Ford. Rupp did not participate in a status conference held on June 18, 2018, with the Government and counsel for Ford. Doc. 57. Ford indicated his intent to plead pursuant to a plea

agreement on June 19, 2018. Doc. 58. The plea hearing was held on June 26, 2018, and Ford's plea was accepted by the district court on July 16, 2018. Docs. 70, 85. The plea agreement that was filed indicates that Ford signed it on June 14, 2018. Doc. 71.

The Northern District of Iowa gained custody of Wright, and on June 22, 2018, the court held Wright's initial appearance and arraignment and set his trial for the two-week setting beginning on August 20, 2018. Docs. 63, 65. Nearly two months after Rupp had filed his notice of intent to plead, on July 11, 2018, the Government filed a third superseding indictment charging him (as it had in the original indictment) with Hobbs Act robbery, which Rupp had already pleaded to (now labeled count 5), possession of a firearm by a prohibited person (now labeled count 4), and carrying a firearm in relation to a crime of violence (now labeled count 7). Doc. 80. For the first time, Rupp was also charged with conspiracy to commit Hobbs Act robbery (count 6). *Id.* The Government does not dispute Rupp's representation in the current motion that the evidence presented to the grand jury to obtain the third superseding indictment did not materially differ from the evidence before the grand jury when it issued the original and first superseding indictments. Doc[.] 94 at 2; Doc. 94-1 at 6; Doc. 113-1.[4]

On July 16, 2018, I held an arraignment on the third superseding indictment and status conference with all defendants and their counsel. Doc. 87. The Government explained that it included charges that the defendants had already pleaded to in the superseding indictment because it understands that a superseding indictment technically replaces the prior indictment, which is the reason it is called "superseding." I inquired whether the Government intended for Rupp to go to trial on count 5 (the Hobbs Act robbery count that he had already pleaded guilty to), and the Government indicated it did not, and Rupp's counsel stated he had nothing to add. Therefore, when I arraigned Rupp, I asked how he pleaded to the counts in the third superseding indictment with the exception of count 5. I noted that "[p]rior to the Third Superseding Indictment, Defendant Rupp was pending sentencing and was not scheduled for trial with Defendant Wright, who had a trial date of August 20, 2018." Doc. 88. Wright indicated that "he had intended to request a continuance of the August 20, 2018[] trial date to allow adequate time to prepare for trial," and I found

---

[4] Rupp cites to Exhibits A and B, which are transcripts of the grand jury testimony from March 7, 2018, and May 9, 2018. Docs. 95, 95-1.

that he "would be entitled to a new trial date based on the Third Superseding Indictment," so I "scheduled a trial date for both Defendants for the two-week period beginning September 10, 2018." Doc. 88. I found "any delay between August 20, 2018, to September 10, 2018, for Defendant Wright should be excluded from speedy trial calculations to allow him to be joined for trial with Defendant Rupp as the case has not been severed." Doc. 88 (emphasis omitted).

Rupp filed a motion to dismiss the § 924(c) firearm count on August 6, 2018 (which I have addressed by a separate report and recommendation), and he filed the current motion to dismiss on August 8, 2018, arguing that the Government's use of superseding indictments to dismiss counts abused the grand jury process. Docs. 91, 94. A fourth superseding indictment issued on August 8, 2018, containing the same charges (with the same count numbers) against Rupp as the third superseding indictment. Doc. 99. On August 14, 2018, Wright filed a motion to continue trial, which neither Rupp nor the Government resisted. Doc. 109. Given Wright's need for additional time to review discovery, as well as the pending motions to dismiss (Rupp's current motion, as well as Rupp's and Wright's motions to dismiss the § 924(c) firearm counts), I granted the motion and continued Wright and Rupp's trial to the two-week period beginning November 19, 2018, excluding time for purposes of the Speedy Trial Act from August 14, 2018, to the time of the November trial. Doc. 116.

I held a hearing on the motion to dismiss on September 11, 2018, at which Leon Spies, who is codefendant Ford's attorney, and Cedar Rapids Police Officer John O'Brien testified. Doc. 119. Their testimony indicated that shortly after the robbery, Ford had implicated Rupp in the offense conduct, and the Government had been attempting to work out a deal with Ford in exchange for his testimony against Rupp. In mid-April 2018, neither the Government nor Ford's attorney could find Ford, and they remained unable to locate Ford until his arrest on May 16, 2018. At the hearing, I also admitted Plaintiff's exhibits 1-5 (Docs. 113, 121) and Defendant's exhibits A, B, C-1 to C-3, and D-F (Docs. 94, 95, 120). Doc. 119. I questioned the Government at the hearing on the Speedy Trial Act implications of its argument that the firearm counts in the original indictment had never been dismissed and remained pending through June 2018. At my request, the parties submitted supplemental briefing on this and other issues. Docs. 122, 123.

Doc. No. 133 at 2-8 (footnotes in original).

## II.    APPLICABLE STANDARDS

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### III.    THE R&R

Judge Mahoney summarized Rupp's argument as follows:

> [T]he Government abused the grand jury process and circumvented Federal Rule of Criminal Procedure 48(a) by charging him with these counts originally, dismissing them through a superseding indictment that omitted these counts, and then, after he had pleaded guilty to the Hobbs Act robbery count and his plea had been accepted, charging him with the firearm counts again through another superseding indictment.

Doc. No. 133 at 8. She then considered three issues in determining whether the firearm counts against Rupp should be dismissed:

- Whether the Government dismissed the firearm counts by superseding indictment

- Whether Rule 48(a) applies to the dismissal of some, but not all, of the counts in an indictment

- Whether Rule 48(a) requires dismissal of the firearm counts

*Id.*

Judge Mahoney started by examining the language and history of Federal Rule of Criminal Procedure 48(a), which provides: "The government may, with leave of court, dismiss an indictment, information, or complaint. The government may not dismiss the prosecution during trial without the defendant's consent." The "leave of court" requirement was added without explanation, but the Supreme Court has stated its purpose is "apparently to protect a defendant against prosecutorial harassment, *e.g.*, charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection." Doc. No. 133 at 8 (citing *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977)). Rupp argues the Government evaded the "leave of court" requirement by dismissing counts pursuant to a superseding indictment rather than by motion. *Id.* at 9. The Government contends the original indictment was never dismissed so the firearm counts remained pending. *Id.* It further argues that Rule 48(a) applies only to the dismissal of an entire indictment, not just some of the counts. *Id.* Finally,

the Government argues it did not engage in bad faith because the firearm counts were dropped due to the unavailability of an essential witness (Ford). *Id.*

Regarding the first issue, Judge Mahoney concluded the Government had constructively dismissed the firearm counts by filing the second superseding indictment that omitted those counts. *Id.* at 12. She acknowledged case law that holds the Government may proceed to trial on any pending indictment, but noted these cases did not consider additional conduct by the Government suggesting its intent to have the other pending indictments dismissed by the superseding indictment. *Id.* at 10. Here, Judge Mahoney noted that after Rupp pleaded guilty to Hobbs Act robbery and the court set his trial date for May 30, 2018, on the remaining firearm counts in the first superseding indictment, the Government filed the second superseding indictment omitting the firearm counts. *Id.* It then told the court via email that no "charges . . . remain for trial against [Rupp] at this time." *Id.* (citing Doc. 94-3 at 1). Based on this representation, the court canceled Rupp's scheduled trial. *Id.* When the third superseding indictment was filed, recharging the firearm counts, the Government expressed its intent during the arraignment that the superseding indictment replace the prior indictment. *Id.* at 10-11. In the interim, Rupp had no notice the charges remained pending and had not worked to resolve them or prepare to defend them. *Id.* at 11.

Judge Mahoney explained that Speedy Trial Act considerations also supported her conclusion. *Id.* While it is disputed whether Rupp's speedy trial clock would have run,[5] Judge Mahoney explained that it was doubtful the court would have canceled Rupp's May trial date if the Government had not represented that the firearm counts had been resolved. *Id.* at 11-12. Indeed, the court canceled Rupp's trial date on the firearm counts because the Government represented those counts had been dismissed. *Id.* at 12. If the parties

---

[5] *See* Doc. No. 133 at 11-12, n.3 (analyzing Speedy Trial Act calculations and addressing the Government's argument that a reasonable period of delay would have been allowed based on alleged joint trials with codefendants).

considered them to remain pending, Rupp may have moved to dismiss them on Speedy Trial Act grounds or may have prevailed at trial on May 30. *Id.*

Judge Mahoney concluded the Government "constructively dismissed the firearm counts against Rupp when it filed a superseding indictment omitting those charges and notified the court to cancel Rupp's scheduled trial because no unresolved charges remained pending against Rupp." *Id.* While the case law provides that the Government may not dismiss counts by superseding indictments because it would render the "leave of court" language in Rule 48(a) superfluous, Judge Mahoney reasoned that the unique procedural history of this case supported the conclusion that the second superseding indictment's omission of the firearm counts had dismissed them. *Id.* at 13.

The second issue Judge Mahoney considered was whether Rule 48(a) applies to the dismissal of some, but not all, of the counts in an indictment. *Id.* The Government argues the "leave of court" requirement applies only to the dismissal of an entire indictment. It did not cite any case law in support of this argument. *Id.* Based on her review of the case law, Judge Mahoney concluded that Rule 48(a)'s "leave of court" requirement applies regardless of whether the Government seeks to dismiss some or all counts of an indictment. *Id.* at 14.

Finally, Judge Mahoney considered whether Rule 48(a) requires dismissal of the firearm counts now. *Id.* She stated that the Government should have obtained leave of court under Rule 48(a) before dismissing the firearm counts, but that Rupp did not raise the issue at the time of dismissal or otherwise request that the Government provide its reasons for dismissing those counts. *Id.* Judge Mahoney cited numerous cases demonstrating that when an indictment is dismissed under Rule 48(a) and the Government later re-indicts on the same charges, the court considers the Government's reasons for the initial dismissal to determine if reindictment violates the purpose of Rule 48(a). *Id.* at 14-16. That purpose, again, is to prevent prosecutorial harassment. She noted that whether a Government's dismissal should be with prejudice depends on the Government's

reasons for dismissal and whether reindictment violates the purpose of Rule 48(a)'s "leave of court" requirement. *Id.* at 16-17.

The Eighth Circuit recognizes "two circumstances in which the district court may deny leave to dismiss an indictment: when the defendant objects to the dismissal, and when dismissal is clearly contrary to the manifest public interest." *Id.* at 17 (quoting *United States v. Jacobo-Zavala*, 241 F.3d 1009, 1012 (8th Cir. 2001)). Judge Mahoney concluded that neither circumstance was present in this case. She noted that dismissal clearly contrary to the manifest public interest typically includes instances in which the prosecutor has acted in bad faith and has an improper motive. *Id.* In *Jacobo-Zavala*, the court provided examples of "bribery, inconvenience to the prosecutor, or personal dislike for the victim of a crime." *Id.* (quoting *Jacobo-Zavala*, 241 F.3d at 1014-15). She did not find any such circumstance here.

With regard to whether the defendant objects to the dismissal, Judge Mahoney noted that dismissal without prejudice should still be granted unless there is evidence of prosecutorial harassment, bad faith or an otherwise improper purpose in seeking dismissal. *Id.* at 17-18. She cited several Eighth Circuit cases in which the court found that it was appropriate for charges to be dismissed without prejudice allowing the Government to refile those charges for various reasons absent prosecutorial abuse. *Id.* at 18.

Here, Judge Mahoney considered Rupp's argument that he entered into a de facto plea agreement with the Government to plead guilty to the Hobbs Act robbery in exchange for dismissal of the firearm counts. *Id.* She concluded the evidence did not support this theory because at the time Rupp entered his notice of intent to plead, he indicated he would keep his trial date as to the firearm counts. *Id.* The evidence also showed that the Government chose to drop the firearm counts to avoid the May trial date due to insufficient evidence based on difficulties locating Ford, an essential witness. *Id.* Judge Mahoney concluded the Government's conduct did not affect the validity of Rupp's plea

and, even if it did, the appropriate remedy would be to allow Rupp to withdraw his plea, which he has chosen not to do. *Id.* at 18-19.

Turning to whether the Government's dismissal of the firearm counts would be appropriate under Rule 48(a), Judge Mahoney focused on the Government's reasoning concerning the unknown whereabouts of its essential witness for the firearm counts – Ford. At the time the Government obtained the second superseding indictment omitting the firearm charges, the Government had not been able to locate Ford for about a month, even with the help of the police. *Id.* at 19. Judge Mahoney then noted: "Once Ford was charged and arrested (after Rupp pleaded and the firearm counts were dismissed, but before his plea was accepted and his scheduled trial was canceled), the Government contends that it needed time to work out a deal with Ford in exchange for his testimony against Rupp." *Id.* Rupp notes that Ford signed his plea agreement on June 14, 2018, filed a notice of intent to plead guilty on June 19, 2018, and had a plea hearing on June 26, 2018, but the Government did not reinstate the firearm charges against Rupp until July 11, 2018. *Id.*

Judge Mahoney found the Government's conduct concerning because it was not transparent with Rupp nor the court regarding its intent to reindict Rupp after securing Ford's cooperation. *Id.* While the Government's emails with defense counsel and the court hinted at this possibility, Judge Mahoney also understood Rupp's perspective that it appeared the Government had decided not to pursue the firearm charges based on uncertainty about the gun. *Id.* She stated, "[t]his is especially troubling in light of the firearm charges being dismissed at the time of Rupp's plea hearing, potentially affecting the court's ability to ensure Rupp truly understood the consequences of his plea, and given that Rupp's plea was accepted, leading him to believe the case against him was resolved." *Id.* at 19-20. Based on "the Government's inquiry regarding delaying trial until Wright was in custody, which was denied, and the Government's failure to inform the court of its intentions to refile at the time of the dismissal, I cannot help but wonder if the Government was motivated, at least in part, to attempt an end-run around the court's

firm trial date." *Id.* at 20. She noted a formal motion for dismissal without prejudice under Rule 48(a) could have assured that everyone was on the same page and given Rupp the opportunity to object and insist on trial as to the firearm counts. *Id.*

Ultimately, however, Judge Mahoney concluded that dismissal of the firearm charges was not warranted. First, she found that Rupp was not prejudiced, which some courts require for a Rule 48(a) dismissal to bar re-prosecution. *Id.* Rupp had not been unnecessarily detained as he was awaiting sentencing on the robbery count. *Id.* Dismissal of the firearms counts did not induce Rupp to plead to the robbery count. *Id.* Rupp did not assert double jeopardy or other constitutional violations, did not invoke the Speedy Trial Act, and did not take issue with the timing of his trial shown by his consents to codefendant Wright's continuances. *Id.* at 20-21.

Second, Judge Mahoney concluded that the facts do not support a finding of bad faith or prosecutorial harassment based on the Government's inability to locate an essential witness. *Id.* at 21. She distinguished *United States v. Derr*, 726 F.2d 617, 619 (10th Cir. 1984), in which the prosecution sought dismissal without prejudice under Rule 48(a) on the day of trial because it was dissatisfied with the state of the investigation and needed further investigation. The Tenth Circuit held that dismissal with prejudice was not "unduly harsh" because the Government was "obviously unprepared to proceed" to trial. *Derr*, 726 F.2d at 619.

In distinguishing *Derr*, Judge Mahoney first noted that dismissal in this case did not occur on the day of trial. Second, the Government in this case did not have a general need for more evidence, but a specific need for a particular witness – Ford – whom the Government had diligently been trying to locate with the help of law enforcement. *Id.* Judge Mahoney cited several circuit cases and one district court case in which courts have held that the Government may move for dismissal under Rule 48(a) based on the inability to locate an essential witness or to secure such a witness' cooperation. *Id.* at 22. Judge Mahoney concluded the Government should have explained its reason for dropping the firearms counts to the court and Rupp. *Id.* at 22-23. However, she stated: "As Rupp

did not raise this issue to the court's attention at the time of the dismissal, I do not fault the Government for its failure to seek leave in this instance, and I do not find the Government acted in bad faith or with intent to harass." *Id.* at 23.

In sum, Judge Mahoney found that the Government did not intentionally seek to evade Rule 48(a)'s "leave of court" requirement by using a superseding indictment to dismiss the firearm counts and that its reasons for dismissal were not improper under Rule 48(a). *Id.* She cautioned that in future cases the Government should seek leave of court under Rule 48(a) for the dismissal of counts, as well as indictments. *Id.* at 24. However, under the unique circumstances of this case, she concluded that dismissal of the firearm counts with prejudice was not the appropriate remedy and thus recommends that I deny Rupp's motion to dismiss. *Id.* at 23-24.

## IV.   DISCUSSION

### A.   *Government's Objections*

The Government seeks to clarify the record with regard to Judge Mahoney's concerns about its lack of transparency in removing the firearm counts, at least to the extent such clarification is necessary to the determination of the ultimate issues. *See* Doc. No. 147 at 6-7. I do not find clarification to be necessary but I generally agree with Judge Mahoney's concerns regarding the Government's conduct in this case.[6]

---

[6] I am particularly concerned by the Government's shifting position as to whether the second superseding indictment had the effect of dismissing the firearms charges against Rupp. On May 8, 2018, counsel for the Government represented to the court and opposing counsel via email that in light of Rupp's notice of intent to plead guilty to the Hobbs Act charge, "I do not expect any charges will remain for trial against Mr. Rupp at this time." Doc. No. 94-3 at 1. The court adopted this representation on May 22, 2018, after accepting Rupp's plea, by canceling Rupp's trial and noting that "[t]here are no counts left to be resolved." Doc. No. 55 at 1. However, in resisting Rupp's motion to dismiss, the Government affirmatively argued that the firearms charges had never *really* been dismissed because the Government had not sought their dismissal pursuant to Rule 48. Doc. No. 113-1 at 9-10, 15. I understand, based on the transcript of the

(Footnote continued . . .

The Government also seeks to clarify its position regarding any Speedy Trial Act concerns. It emphasizes (as acknowledged in the R&R) that Rupp has not objected on Speedy Trial Act grounds and further argues that any time beyond the 70-day statutory period was excludable, either because Rupp was joined with Wright, *see* 18 U.S.C. § 3161(h)(6) or because Ford was an "essential witness" who was absent or unavailable. *See* 18 U.S.C. § 3161(h)(3)(A). I will consider these arguments in discussing Speedy Trial Act issues later in this order.

The Government objects to the finding that the third superseding indictment replaced the prior indictment. While it initially made this argument, it states that subsequent review of case law suggests this view is incorrect as a matter of law. I agree with Judge Mahoney's analysis as to this issue. I appreciate that a superseding indictment generally does not equate to a dismissal of the prior indictment, but all parties involved here proceeded as though the prior indictments had been dismissed and replaced. As such, I agree with Judge Mahoney that under the circumstances present here, the Government constructively dismissed the prior indictments.

The Government next states:

> Contrary to the statement in the first full paragraph on page 19 of the R&R, Ford was charged on May 10, 2018, *prior to* (not after) defendant's entry of a plea of guilty on May 15, 2018. This is potentially significant to the extent defendant claims he did not know Ford had been missing. Certainly by the time of defendant's guilty plea, defendant knew Ford had been apprehended.

Doc. No. 147 at 11 (emphasis in original). On this point, the Government is simply wrong. While Ford was charged in the superseding indictment filed May 10, 2018, he was not arrested until May 16, 2018, and his initial appearance and arraignment occurred

---

hearing on the motion to dismiss, that counsel for the Government may have misunderstood the law at the time of the initial representation. Doc. No. 144 at 24-25. However, given that the representation was made, and relied upon by the court, the Government should have thought twice before resisting the motion on this basis.

the following day. *See* Doc. Nos. 47 and 48. Therefore, when Rupp filed his notice (Doc. No. 31) of intent to plead guilty to the Hobbs Act charge on May 8, 2018, and when he actually entered his plea of guilty to that charge on May 15, 2018, he could not have known "Ford had been apprehended" because Ford had not, in fact, been apprehended. No clarification of the R&R is necessary on this issue.

The Government also takes issue with Judge Mahoney's comment that it is "quite doubtful, that the district court would have canceled Rupp's May trial date if the Government had not represented that the firearms counts had been resolved." Doc. No. 147 at 12 (quoting Doc. No. 133 at 11-12). The Government claims that it never represented those charges had "been resolved," but that it did not expect any charges would remain for trial in the second superseding indictment against Rupp at the time. It contends that all its communications left the door open to those charges being reinstated. Nevertheless, leaving the door open to the possibility of reindictment is hardly the same as disclosing the reasons for dismissing the charges in the first place, which the Government would have been required to do had it sought leave to dismiss pursuant to Rule 48(a). Nonetheless, I do not find that this issue makes any difference to the outcome.

Ultimately, I find that none of the Government's clarifications or objections are material. To the extent the clarifications are relevant to my analysis, I will note them below. Otherwise, the Government's objections are overruled.

## B.    *Rupp's Objections*

Rupp objects to the R&R on several grounds: (1) the record demonstrates the Government acted in bad faith, (2) the court should follow *United States v. Derr*, (3) even if the Government did not act in bad faith it should not be allowed to piecemeal charges because it leads to abuse of the grand jury process and interferes with a defendant's legitimate expectations, (4) the Government did not provide good reasons to

justify its reindictment, (5) the court should follow *United States v. Garcia-Aguilar* and (6) Rupp is prejudiced by the Government's conduct.

### 1.    Bad Faith

Rupp argues the Government acted in bad faith by trying to get him to plead guilty to the firearm counts that had already been dropped.  On May 10, 2018, at 8:33 a.m., counsel for the Government emailed counsel for Rupp stating: "Also, just want to confirm what appears to be obvious, that your client is not interested in a written plea agreement that would include a gun count along the lines previously mentioned."  Doc. No. 94-4. Counsel for Rupp responded at 8:36 a.m.: "At this point, given the evidence, my client is only willing to plead to the Hobbs Act count."  *Id.*  Rupp argues the Government's email constitutes prosecutorial conduct and bad faith because at the time it sent its email on May 10 it had already obtained the second superseding indictment eliminating the gun counts on May 9, 2018, and should have informed defense counsel.  Doc. No. 139 at 3. The second superseding indictment was not filed until after the email exchange with Rupp's counsel.

Rupp argues that the Government's explanation of difficulties obtaining Ford's cooperation is further evidence of bad faith because the Government failed to disclose that information to Rupp.  Rupp notes that Ford was not charged until the second superseding indictment (Doc. No. 38) was returned on May 9, 2018.  *Id.*  That indictment was filed, and Ford's arrest warrant was issued, the following day.  Doc. Nos. 38, 41. As noted above, Rupp then pleaded guilty to the Hobbs Act robbery charge on May 15, 2018, and Ford was arrested on May 16.  Rupp argues this timeline suggests that Ford was not difficult to locate.[7]  He contends that as of May 16, 2018, the Government was

---

[7] Rupp challenges the Government's credibility on its inability to locate Ford, stating that the Government provided general statements regarding its efforts to locate Ford in April and has not

(Footnote continued . . .

in the same position it had been in prior to Ford's "disappearance" beginning in mid-April. *Id.* Rupp further points out that Ford pleaded guilty on June 26, 2018, but the Government did not reindict Rupp on the firearm charges until July 11.

I understand Rupp's frustration with the Government's conduct in this case. However, I do not find that it amounts to bad faith. The Government was in the process of determining whether it needed to have Ford's cooperation to proceed with the firearm charges against Rupp. If Rupp had changed his mind and agreed to plead to the firearm charges, the Government could have chosen not to file the second superseding indictment. Ultimately, Rupp's decision not to plead to the firearm charges at that time was not hindered or manipulated in any way by the Government's conduct.

With regard to the Government's explanation that it was having difficulties locating Ford, I do not find anything in the record to suggest that this was not true or that withholding this information from Rupp rose to the level of bad faith. While Rupp points out he was not reindicted until two months after Ford's arrest and two weeks after Ford's guilty plea, I am unclear as to what significance Rupp wants me to draw from this. I do not find the timing alone to be suspect. Ford was entitled to take the necessary time following his arrest to discuss his options with his counsel. Between the court's schedule (including the mid-week July 4 holiday) and the grand jury schedule, it appears the Government moved expeditiously to account for any evidence from Ford in determining whether to reindict Rupp on the firearm charges.

To the extent Rupp argues he was entitled to know about the Government's difficulties in locating Ford or Ford's role as a cooperator, I am unclear as to how this would have changed anything for Rupp. While it certainly could have reduced his surprise when the firearm charges were refiled, he has not demonstrated how the

---

provided specific reasons for why it was not able to find Ford. I find no reason to doubt the Government's credibility on its representation that it had difficulties locating Ford. As noted by Judge Mahoney, Ford's own attorney had difficulties getting in touch with him, as did law enforcement.

Government's withholding of this information affected his decision making.  Also, the Government was not in the same position upon Ford's arrest as it had been prior to Ford's disappearance in mid-April.  As Rupp points out, Ford was not previously charged with anything.  By May 16, 2018, Ford was indicted and in custody.  This development, alone, could have changed Ford's willingness to cooperate.

In sum, I do not find that the Government's conduct amounts to bad faith.  Rather, it appears to be the product of difficult and changing circumstances.  While the Government could have been more forthright with Rupp regarding the situation (and would have had to disclose its reasons for dismissing the firearm counts had it moved for leave to dismiss under Rule 48(a) over Rupp's objections), its conduct does not rise to the level of bad faith.  This objection is overruled.

### 2. *United States v. Derr*

Rupp argues I should follow *United States v. Derr*, 726 F.2d 617 (10th Cir. 1984) and prohibit the Government from reinstating the firearm counts.  In *Derr*, the court allowed the Government to dismiss the Indictment against the defendant on the day trial was scheduled to begin, pursuant to Rule 48(a), without requiring the Government to state a reason for the dismissal.  The Government then reindicted the defendant on the same charges.  *Derr*, 726 F.2d at 617-18.  The Government's explanation for the first dismissal was that it was dissatisfied with the state of its investigation and wanted to investigate further.  *Id.* at 619.  The district court dismissed the second indictment with prejudice and the Tenth Circuit affirmed.

Judge Mahoney distinguished *Derr* based on proximity to trial and the fact that in this case, the Government has identified a specific piece of evidence it had been diligently trying to locate when it dismissed the charges via the second superseding indictment.  *See* Doc. No. 133 at 21-22.  She cited numerous cases in which courts have allowed the Government to recharge based on various difficulties with witness-related evidence.  *Id.* at 22.  Judge Mahoney stated that the Government should have explained its reasoning to

the court, and to Rupp, in dismissing the charges via the second superseding indictment, but ultimately found the Government had not acted in bad faith or with intent to harass in failing to seek leave for the dismissal. *Id*. at 22-23.

Rupp argues his situation is analogous to *Derr* because the Government dismissed the firearm counts just before his plea hearing. He contends that the Government's failure to file a Rule 48(a) motion prevented the court from determining whether the dismissal should be with or without prejudice. Rupp also takes issue with any suggestion in the R&R that *he* should have raised the Rule 48(a) issue with the court or otherwise objected at the time of dismissal. *See* Doc. No. 133 at 23 ("As Rupp did not raise this issue to the court's attention at the time of the dismissal, I do not fault the Government for its failure to seek leave in this instance, and I do not find the Government acted in bad faith or with intent to harass."). Rupp argues that because the charges were dismissed by the filing of the second superseding indictment, he had no reason to object. Doc. No. 146 at 5, n.3. He notes he timely filed his motion to dismiss the firearm counts after they were reasserted in the third superseding indictment and that if the Government never reasserted the firearms counts, there would not be an issue. *Id.*

I agree with Rupp that there was no occasion for him to "object" to the dismissal of the firearm counts given that they were dismissed by way of superseding indictment. I disagree, however, that the circumstances (dismissal prior to his plea hearing) are similar to *Derr* (dismissal the day of trial). Rule 48(a) allows dismissal with leave of court except "during trial" at which point the Government must obtain the defendant's consent. Both the leave of court requirement and consent requirement during trial serve to protect a defendant from prosecutorial harassment. Trial is the occasion for the Government to prove the charges, meaning that the Government is essentially committed to its evidence at that point. At a plea hearing, the state of the Government's evidence and its ability to prove the charges is immaterial, except as to inform the defendant's decision of whether to plead guilty.

In *Derr*, the defendant evaluated the Government's evidence, made an informed choice to go to trial and was prepared to defend the charges. However, the Government moved to dismiss the indictment on the day trial was to commence, stating only that dismissal would "best meet the ends of justice." 726 F.2d at 618. The Tenth Circuit explained the fallout from this situation as follows:

> In the hearing on defendant's motion to dismiss the second indictment, Assistant U.S. Attorney Michael Ringer explained his position at the time of the earlier motion: "I was dissatisfied with the state of the investigation and the state the charges were in. So, we moved to dismiss for the purpose of continuing the further investigation into the matter." Unless the government could articulate a better reason for dismissal than this, we think that the trial judge would have had to deny the motion considering that it was made over defendant's objection and on the day trial was scheduled to begin. Hence, remanding the case for a determination whether the government had valid reasons for dismissing the original indictment would be fruitless. Moreover, if the trial court had initially ruled correctly and refused to dismiss the original indictment, the government's only alternatives would have been to try a case in which it was obviously unprepared to proceed or to move to dismiss the indictment with prejudice.

*Id.* at 619. In other words, the Government sought dismissal in *Derr* because when the day of trial arrived, the Government was not – for unexplained reasons – prepared to prove the charges.

The situation here is much different. The Government made the decision to withdraw the firearms charges against Rupp well in advance of trial. While Rupp had decided to go to trial on the firearm charges at the time he entered his guilty plea to the Hobbs Act robbery, his defense to the firearm counts was not prepared to the extent it would have been on the day of trial. His trial was scheduled for May 30, 2018, and the second superseding indictment (which omitted the firearms charges) was filed on May 10, 2018. Rupp then pleaded guilty to the Hobbs Act robbery charge on May 15, 2018, and his trial was canceled when I accepted his guilty plea on May 22, 2018. The Government's conduct is much less indicative of harassment when charges are dismissed

20 days prior to trial than when the Government waits until the day trial is scheduled to begin.

I also agree with Judge Mahoney that the Government's reasoning here is less indicative of harassment than it was in *Derr*. In *Derr*, the Government offered no specific reason why it was dissatisfied with the state of its evidence beyond that it needed to conduct further investigation. Here, rather than general unease with the quality of its evidence, the Government had been attempting to locate a specific witness concerning the firearms charges against Rupp. While the Government should have informed Rupp and the court of its reasons for changing course in the second superseding indictment, I agree with Judge Mahoney that its reasons for dismissal were not improper under Rule 48(a) and that leave likely would have been granted had the Government so moved. This objection is overruled.

### 3. Preventing a Piecemeal Approach Under United States v. Poindexter

Rupp relies on *United States v. Poindexter*, 719 F. Supp. 6 (D.D.C. 1989) to argue that the Government should not be allowed to piecemeal charges because such an approach lends itself to abuse of the grand jury process and defeats the defendant's legitimate expectations. He further argues that Judge Mahoney did not give sufficient weight to the purpose of Rule 48(a).

In *Poindexter*, the court considered the Government's motion pursuant to Rule 48(a) to dismiss two out of three counts of an indictment without prejudice. *Poindexter*, 719 F. Supp. at 10. The court noted that the Government's reasons for seeking dismissal were "somewhat murky." *Id.* at 11. Later, the Government clarified that the investigation was not yet complete and that witnesses who were protected by the privilege against self-incrimination may later become available to testify. *Id.* The court stated that Rule 48(a) should not be used to gain a position of advantage or escape a position of less advantage, that was the result of the Government's own doing. *Id.* The court emphasized that the Government was not seeking to dismiss an entire indictment, which could be

refiled later, but was attempting to pick and choose among several charges so as to proceed to trial on some charges and delay the resolution of others at some future, indefinite date. *Id.* The court explained that such selectivity "must be viewed with suspicion and disfavor, for it clearly lends itself to abuse and is particularly invasive of a defendant's legitimate expectations." *Id.*

As with *Derr*, the factual situation in *Poindexter* is significantly different from what happened here. In *Poindexter*, the defendant's trial was expected to take place almost two years after he was first charged. If the court dismissed the two counts without prejudice, the defendant would have had to wait in a state of uncertainty for some unspecified time until the Government decided that the time was right to proceed with a trial on the second group of charges. *Id.* The court found that this uncertainty constituted harassment.

In this case, the Government's reason, while not disclosed to Rupp or the court, was much more explicit. The reason was not vague and open-ended, but instead was limited to a specific witness, whose availability and usefulness could be ascertained within a relatively short time. Moreover, at the time the firearm counts were dismissed by way of a superseding indictment, Rupp had already filed notice of his intent to plead guilty to the Hobbs Act charge. *See* Doc. No. 31 (notice filed May 8, 2018) and 38 (second superseding indictment filed May 10, 2018). Thus, the multiple trials that were of concern in *Poindexter* were not a significant concern here. While the Government's conduct did disrupt Rupp's expectations,[8] a defendant is not entitled to demand that the

---

[8] Certainly the effect of the Government's dismissal in this case was worse than in *Poindexter* because here, the Government's dismissal by way of superseding indictment without any reason, gave Rupp the false impression that he caught a lucky break and all federal charges against him had been resolved. Indeed, one purpose of Rule 48(a)'s leave of court requirement is to put the parties and the court on notice of the Government's intentions. Ultimately, however, I do not find that deprivation of that notice here is enough to justify dismissal with prejudice given that the third superseding indictment and refiling of charges did not put Rupp in a worse position (with regard to the firearm counts), but merely returned him to the same position he would have been in without the second superseding indictment.

Government bring particular charges to trial at a certain time, except (1) the defendant may withhold consent to the dismissal of charges during trial and (2) the defendant may enforce his or her Speedy Trial rights. The dismissal in this case did not occur during trial, and even if Rupp had asserted his Speedy Trial rights in response to the dismissal by way of the second superseding indictment, those rights likely would not have precluded dismissal and reindictment. *See infra* section IV(B)(6) (discussing Speedy Trial rights in greater detail). This objection is overruled.

###    4.    *Good Reasons*

Next, Rupp argues that the Government's reason for dismissing and refiling the firearm charges was insufficient to justify dismissal without prejudice. He states that there must be a justification for dismissal and reindictment, such as further development of the case. Rupp notes that the testimony to the Grand Jury for the initial and third superseding indictment was almost identical and that the Government did not introduce evidence from Ford in obtaining the third superseding indictment.

Judge Mahoney cited several cases in which courts have granted dismissal pursuant to Rule 48(a) based on an inability to locate an essential witness or secure such a witness's cooperation. *See* Doc. No. 133 at 22; *see also United States v. Rush*, 240 F.3d 729, 730 (8th Cir. 2001) (per curiam) ("Indeed, the district court had to grant the motion unless the dismissal 'would be clearly contrary to manifest public interest, determined by whether the prosecutor's motion to dismiss was made in bad faith.'"); *United States v. Feldhacker*, 849 F.2d 293, 925 (8th Cir. 1988) ("In general, absent prosecutorial abuse, a defendant does not obtain immunity from prosecution simply because the prosecution has previously dismissed an indictment which described the criminal acts at issue."). I agree with Judge Mahoney that dismissal based on the inability to locate a witness does not amount to bad faith or prosecutorial harassment, at least on the facts of this case. *See* Doc. No. 133 at 21.

Moreover, of course, the standard of proof for obtaining an indictment is substantially less than the standard for obtaining a conviction at trial. Having already obtained the first indictment, it is not surprising that the Government found no need to present additional evidence on the firearms charges to obtain the third superseding indictment. This is not inconsistent with the Government's explanation that it was hesitant to proceed to trial on those charges without the ability to call Ford as a trial witness. I find that the Government's reason would have permitted dismissal without prejudice under Rule 48(a), had the Government so moved. This objection is overruled.

### 5. *United States v. Garcia-Aguilar*

Rupp argues the R&R improperly distinguished *Garcia-Aguilar* because the Government should have similarly lost the power to file additional charges the moment Rupp pleaded guilty to the Hobbs Act robbery. Judge Mahoney noted that the fact Rupp did not raise double jeopardy or other constitutional principles distinguished this case from *Garcia-Aguilar*. Doc. No. 133 at 20, n.5. She summarized that case as follows:

> In *Garcia-Aguilar v. United States District Court for Southern District of California*, 535 F.3d 1021, 1023 (9th Cir. 2008), the defendants pleaded guilty before a magistrate judge to an indictment charging them with unlawfully reentering the country after previously being removed, in violation of 8 U.S.C. § 1326. Before the district court judge accepted the pleas, the Government issued a superseding indictment charging the defendants with unlawfully reentering the country after previously being removed for committing a felony, in violation of 8 U.S.C. § 1326(b)(2), exposing the defendants to a greater maximum sentence. *Id.* at 1023-24. The Government asked the district court to find the pleas defective under Rule 11. *Id.* The district court rejected the defendants' pleas to the original indictment, but the Ninth Circuit reversed, ordering the district court to accept the pleas. *Id.* at 1023, 1026. The Ninth Circuit held that "[t]he government lost its power to file additional charges the moment the defendants pled guilty knowingly, voluntarily and unconditionally before the magistrate judges." *Id.* at 1026. Although the opinion does not mention double jeopardy, double jeopardy principles would have barred the Government from bringing the charge in the superseding indictment once jeopardy attached to the charge pleaded to in the original indictment. *See*

*also United States v. Aquino*, 242 F.3d 859, 866 (9th Cir. 2001) (declining to address defendant's argument that the Government's issuance of a superseding indictment after the defendant had pleaded guilty but before he was sentenced violated due process; the defendant argued that new charges against his codefendants in the superseding indictment made him subject to sentencing enhancements, but the court found his sentence unaffected).

*Id.* I agree with Judge Mahoney that *Garcia-Aguilar* is distinguishable given that Rupp does not seek dismissal based on double jeopardy grounds. This objection is overruled.

### 6. Prejudice

Finally, Rupp argues he was prejudiced by the Government's failure to inform him that Ford was missing because knowledge of that fact may have changed his willingness to plead guilty. While Rupp contends there was a tacit understanding that he pleaded guilty to the Hobbs Act robbery in exchange for dismissal of the firearms counts, I agree with Judge Mahoney that the record does not support that assertion. Rupp also argues that by pleading guilty to Hobbs Act robbery, the Government was able to obtain admissions from Rupp that could subsequently be used against him at trial on the firearms counts. He notes that while Federal Rule of Evidence 410 generally prohibits evidence of a defendant's plea in the Government's case-in-chief, Rupp would effectively be precluded from testifying so as not to allow his plea statements to come into evidence as impeachment evidence. As such, he contends the Government secured an advantage by proceeding in this way.

I agree with Judge Mahoney that the remedy for this situation would be to allow Rupp to withdraw his plea and reevaluate his decision based on all the relevant evidence and counts. Rupp argues that the standard for withdrawing a plea may not be met in this case absent a finding of bad faith by the Government. A defendant is allowed to withdraw a guilty plea before sentencing if he can show a fair and just reason for requesting the withdrawal. Fed. R. Crim. P. 11(d)(B). I do not fault Rupp for seeking dismissal of the firearms counts over withdrawal of his plea to the Hobbs Act robbery count, but that was

26

nonetheless an avenue he could have pursued if his complaint was that he did not have all the relevant information in front of him when considering whether to plead. In any event, Rupp has given no indication that that he wishes to withdraw his plea to the Hobbs Act robbery based on the Government's conduct.

Rupp's better argument for prejudice is that had the Government sought leave of court and disclosed the fact that Ford was missing, Rupp could have objected to dismissal and invoked his Speedy Trial Act rights.[9] From Rupp's point of view, the Government's evidence at a trial prior to June 15, 2018, may have looked much different than at a trial scheduled for September 10, 2018, when Rupp was joined for trial with Wright. *See* Doc. No. 88. While Ford's initial appearance and arraignment occurred on May 17, 2018, he did not indicate an intent to plead guilty (and likely cooperate with the Government) until June 19, 2018. Assuming the Government's motion for leave to dismiss been denied, the Government could have theoretically been forced to choose whether to go to trial on May 30, 2018, with the evidence it had or risk dismissal due to a Speedy Trial Act violation.[10]

If these would have been the Government's only two options, Rupp's argument of prejudice would be stronger. However, the Government also could have sought a continuance and requested exclusion of that time from the 70-day period pursuant to 18

---

[9] The Speedy Trial Act provides that a criminal defendant will go to trial within 70 days of the date on which his indictment is made public or he makes an initial appearance, whichever is later. *See* 18 U.S.C. § 3161(c)(1). Judge Mahoney concluded thirty-nine days ran from March 29, 2018 (when she ruled on the Government's detention motion), to May 8, 2018 (when Rupp filed his notice of intent to plead), excluding April 5, 2018 (the date the first superseding indictment was returned and Rupp waived personal appearance at the arraignment). *See* Doc. No. 133 at 11-12, n.3. Another thirty-one days from May 15, 2018 (the date of Rupp's plea hearing) would lead to the expiration of 70 days on June 15, 2018, in the absence of any other exclusionary periods. *Id.*

[10] As noted above, had the Government moved for leave to dismiss pursuant to Rule 48(a) for the reasons it sets forth now (inability to locate Ford), such a request would likely have been granted given the significant authority that dismissal under Rule 48(a) based on the inability to locate an essential witness is a sufficient reason.

U.S.C. § 3161(h)(3), which excludes any period of delay resulting from the absence or unavailability of an essential witness. An essential witness is considered absent under the statute when "his whereabouts are unknown and, in addition, he is attempting to avoid apprehension or prosecution or his whereabouts cannot be determined by due diligence." 18 U.S.C. § 3161(h)(3)(B). While "essential witness" is not defined, the Eighth Circuit has relied on the Senate Judiciary Committee report accompanying the Speedy Trial Act bill defining essential witness as "a witness so essential to the proceeding that continuation without the witness would either be impossible or would likely result in a miscarriage of justice." *United States v. Eagle Hawk*, 815 F.2d 1213, 1218 (8th Cir. 1987) (quoting S. Rep. No. 1021, 93rd Cong., 2d Sess. 37 (1984), U.S. Code Cong. & Admin. News 1974, p. 7401). Considering that the Government dismissed the firearm counts by way of superseding indictment when it was unable to locate Ford (even with the assistance of law enforcement), the Government would have had a strong argument for continuing the May 30, 2018, trial date and excluding the delay from Speedy Trial Act calculations.

Rupp's arguments regarding prejudice are speculative to begin with and become even weaker given the arguments and procedures available to the Government. Rupp's objection to a motion to dismiss the firearms counts without prejudice would have been insufficient to prevent dismissal, as a defendant's consent is required only during trial. *See* Fed. R. Crim. P. 48(a). Moreover, for two reasons it is unlikely that his objection would have been successful. First, only about half of the Speedy Trial Act time had expired when the Government elected to dismiss the firearms counts, meaning reindictment at a later date would not have left him with minimal time to prepare for trial while preserving his Speedy Trial rights and arguably resulting in prejudice. Second, there is substantial authority supporting dismissal without prejudice pursuant to Rule 48(a) in the absence of bad faith. *See* Doc. No. 133 at 22.

Finally, even if Rupp had been successful in objecting to a dismissal motion, he likely would have ended up in the same position the third superseding indictment created because the Government could have sought a continuance based on the absence of an

essential witness and excluded the time under the Speedy Trial Act. For all of these reasons, I find that Rupp has not demonstrated prejudice as a result of the Government's failure to seek dismissal pursuant to Rule 48(a). This objection is overruled.

## V.    CONCLUSION

For the reasons set forth herein:

1.    Defendant's objections (Doc. No. 146) to the R&R are **overruled**.

2.    The Government's objections (Doc. No. 147) to the R&R are **overruled**.

3.    I **accept** Judge Mahoney's R&R (Doc. No. 133) without modification.

4.    Rupp's motion (Doc. No. 94) to dismiss is **denied.**

**IT IS SO ORDERED.**

**DATED** this 3rd day of January, 2019.

_____
Leonard T. Strand, Chief Judge